IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

BOB GERTSCH, BOB DUDLEY, and
DICKEY HART,

    Plaintiffs,

v.                                                    No. 1:12-cv-01277-JDB-egb

CITY OF MARTIN, TENNESSEE,

    Defendant.

_____

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,
DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
DISMISSING CASE
_____

        On November 30, 2012, Plaintiffs, Bob Gertsch, Bob Dudley, and Dickey Hart, initiated this action against the Defendant, City of Martin, Tennessee ("the City"), alleging deprivation of their property rights without due process of law in violation of 42 U.S.C. § 1983 as well as common-law breach of contract. Before the Court are the parties' cross-motions for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Docket Entries ("D.E.") 43, 44.)

*FACTS AND BACKGROUND*

        Plaintiffs, former full-time City of Martin firefighters, were eligible for retirement benefits through, and had properly enrolled in, the Tennessee Consolidated Retirement System ("TCRS"). (Pls.' Stmt. of Material Facts ¶¶ 1–2, D.E. 45.) Once the TCRS determines that an employee is eligible to receive retirement benefits, it calculates the recipient's monthly benefit amount using a formula that factors in the amount of creditable service the employee has

1

accumulated and the employee's average final compensation. (Id. ¶ 3.) Accordingly, the more creditable service a would-be recipient has, the higher his monthly benefit will be. (Id.) Further, before an employee is eligible to start receiving TCRS benefits, he must have at least sixty months of creditable service. (Id. ¶ 4.)

The City recognizes an employee's unused, accumulated sick leave as creditable service and reports the unused sick leave to TCRS when an employee applies for retirement benefits. (Id. ¶ 5.) As City firefighters working twenty-four hour shifts, Plaintiffs accumulated 3.7 hours of sick leave per week. (Id. ¶ 6; Def.'s Stmt. of Material Facts ¶ 6, D.E. 46-2.) This is double the amount of sick leave hours earned per week by the City's other regular, full-time employees, who work less hours per day. (Def.'s Stmt. of Material Facts ¶ 5, D.E. 46-2.) As of Plaintiff Gertsch's last day of employment on December 1, 2011, he had accumulated 867.60 hours of unused sick leave. (Pls.' Stmt. of Material Facts ¶ 7, D.E. 45.) On April 5, 2011, Plaintiff Dudley's last work day, he had accumulated 5139.80 hours of unused sick leave. (Id. ¶ 8.) Plaintiff Hart's final day of employment was September 25, 2008,[1] having accumulated 2970.45 hours of unused sick leave. (Id. ¶ 9.)

The TCRS requires participating municipal employers, such as the City, to report the unused sick leave of certain types of employees, including firefighters, in days rather than in hours, but, as far as the TCRS is concerned, there is no standard formula for municipalities to convert unused sick hours to days. (Id. ¶¶ 10–11.) In reporting Plaintiffs' respective days of unused, accumulated sick leave to TCRS, the City converted every twenty-four hours of unused sick leave into one day. (Id. ¶ 15.) Thus, Gertsch was credited with thirty-six days of unused sick leave, Dudley with 214.1584, and Hart with 123. (Id. ¶¶ 16–18.) This was in accordance

---

[1] Hart did not apply for TCRS retirement benefits until April 30, 2012. (Def.'s Stmt. of Material Facts ¶ 12, D.E. 46-2.)

2

with a longstanding practice of the City's conversion process in reporting creditable service to the TCRS. (Def.'s Stmt. of Material Facts ¶ 10, D.E. 46-2.)

The firefighters contend, however, that a City of Martin personnel policy required Defendant to report their sick leave time to the TCRS at a rate of one day for every *twelve* hours:

> An eight-hour absence from work while sick will constitute a charge of one day of sick leave for all employees, except members of the fire department who work 24 hours on and 48 hours off. *Firefighters working these shifts will be charged one day of sick leave for each 12 hours absent from work due to illness*, or two days sick leave for each 24 hours absent from work due to illness.

(Id. ¶ 1, D.E. 46-2 (emphasis added); *see* Personnel Rules and Regulations, City of Martin, Tennessee at 31, D.E. 45-6.) The City's board of aldermen and mayor adopted this particular policy on February 9, 2004, by Resolution R2004-02,[2] as part of a larger set of Personnel Rules and Regulations (hereinafter "the 2004 Personnel Policies"). (Pls.' Stmt. of Material Facts ¶ 14, D.E. 45.) This action was pursuant to section 20 of the City's charter, which provides that "[t]he board may adopt supplementary rules and regulations governing employment by the City, not inconsistent with the provisions of this charter." (Def.'s Stmt. of Material Facts ¶ 19, D.E. 46-2.)

Despite the existence of the personnel policy at issue, the City charged sick leave hours to employees, during the time of Plaintiffs' employment, on an hour-by-hour basis without reference to how many hours would equal one day. (Id. ¶ 8.) Thus, if they missed an entire shift of work due to illness, employees were charged twenty-four hours of sick leave time without any consideration for how many "days" this constituted. (Id. ¶ 9.)

The 2004 Personnel Policies contained the following provision:

> These personnel regulations are for information only. This is not an employment contract. This document is a statement of current policies, practices, and procedures. Nothing in this document is to be interpreted as giving employees any more property rights in their jobs than may already be given by the city

---

[2] Resolution R2004-02 stated that "the City of Martin periodically updates and revises its municipal employee's personnel manual." (Def.'s Stmt. of Material Facts ¶ 20, D.E. 46-2.)

charter. These personnel policies, rules, and regulations shall be reviewed periodically. The employer reserves the right to change any or all such policies, practices, and procedures in whole or in part at any time, with or without notice to employees.

(Personnel Rules and Regulations at 75, D.E. 45-6.)[3] Indeed, on November 28, 2011, the City's board of alderman and mayor amended several of the 2004 Personnel Policies, including the personnel policy at issue in this case. (Def.'s Stmt. of Material Facts ¶ 15, D.E. 46-2.) Pursuant to Ordinance 2011-04, the policy in question now provides that firefighters are charged twenty-four hours for one day absent from work due to illness. (Id. ¶ 16; *see* Ex. 4 to Decl. of Celeste Taylor, D.E. 46-3 at 35–36.)

Because Gertsch did not have enough creditable service as of his last day of employment with the City, he did not qualify for TCRS retirement benefits. (Pls.' Stmt. of Material Facts ¶ 19, D.E. 45.) If, however, the City had divided his hours of unused sick leave by twelve instead of twenty-four, he would have had sufficient creditable service to qualify. (Id.) Had the City divided Dudley's and Hart's respective hours of unused sick leave by twelve instead of twenty-

---

[3] In addition, before starting his employment with the City, Plaintiff Gertsch signed two forms, which contained the following language:

> In exchange for the consideration of my job application by the City of Martin . . . , I agree that . . . [n]either the acceptance of this application nor the subsequent entry into any type of employment relationship, . . . and regardless of the contents of employee handbooks, personnel manuals, benefit plans, policy statements, and the like as they may exist from time to time, or other City practices, shall serve to create an actual or implied contract of employment . . . . If employed, I understand that the City may unilaterally change or revise their benefits, policies, and procedures and such changes may include reductions in pay or benefits.
>
> . . . .
>
> I further understand that this is an application for employment and that no employment contract is being offered.
>
> I understand that if I am employed, such employment is for no definite period of time and that the City of Martin can change wages, benefits and conditions at any time.

(Exs. 1 & 2 to Gertsch Dep., D.E. 46-4 at 11–12.)

4

four, each would have received (and in the future would receive) a higher monthly pension payment. (Id. ¶¶ 20–21.)

The Plaintiffs filed their complaint in this matter on November 30, 2012. (*See* Compl., D.E. 1.) In it, they allege that the City's written employment policies, specifically the personnel policy at issue, gave them a constitutionally protected property interest in having their unused, accumulated sick leave reported as creditable service to the TCRS at a rate of one sick day for every twelve hours of sick leave they accumulated but did not use, and that these written employment policies constituted a binding employment agreement between them and the City. (Id. ¶¶ 42, 47.) They now move for a determination that, as a matter of law, the Defendant is liable under 42 U.S.C. § 1983 for depriving Plaintiffs of their property rights without due process of law by failing to utilize their conversion rate in reporting to TCRS. In its cross-motion for summary judgment, the City maintains that the personnel policy at issue does not in fact prescribe the method for the City to credit unused, accumulated sick-leave time when reporting to TCRS or, if it does, that the policy does not apply to Gertsch and Hart because it was amended before they retired. Regardless, Defendant insists the Plaintiffs did not possess any constitutionally protected property interest, and, as for Dudley's § 1983 claim, it is time barred. It also seeks dismissal of Plaintiffs' breach-of-contract claim on the ground that the City's written personnel policies are not a contract.

*STANDARD OF REVIEW*

Rule 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see* Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986); Canderm Pharmacal, Ltd. v. Elder Pharm., Inc., 862 F.2d

5

597, 601 (6th Cir. 1988). A dispute about a material fact is genuine only if "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Once the moving party satisfies its initial burden, "the opposing party must go beyond the contents of its pleadings to set forth specific facts that indicate the existence of an issue to be litigated." Slusher v. Carson, 540 F.3d, 449, 453 (6th Cir. 2008). In reviewing a motion for summary judgment, the court must view the evidence "in the light most favorable to the nonmoving party, and draw all reasonable inferences in that party's favor." Smith v. Perkins Bd. of Educ., 708 F.3d 821, 825 (6th Cir. 2013)(quoting Slusher, 540 F.3d at 453); *see* Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). Thus, summary judgment is warranted, following discovery and proper motion, against a party who fails to make a sufficient showing to demonstrate the existence of an element essential to her case and on which she will bear the burden at trial. Celotex, 477 U.S. at 322–23, 106 S. Ct. at 2552.

"The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation." Ferro Corp. v. Cookson Grp., PLC, 585 F.3d 946, 949 (6th Cir. 2009)(citation omitted). "The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts. Rather, the court must evaluate each party's motion on its own merits." Id. at 949–50 (quoting Taft Broad. Co. v. United States, 929 F.2d 240, 248 (6th Cir. 1991)).

*ANALYSIS*

A. Breach-of-Contract Claims under Tennessee Common Law

The City contends that Plaintiffs' breach-of-contract claims must be dismissed because the 2004 Personnel Policies on which they rely are not a contract. In order for the provisions of Defendant's personnel policy to be enforceable as a contract under Tennessee law, the language contained in the policy must evidence the employer's intent to be bound by its contents. Smith v. Morris, 778 S.W.2d 857, 858 (Tenn. Ct. App. 1988). "Unless the employee [policy] contains specific guarantees or binding commitments, the [policy] will not constitute a contract." Williams v. Memphis Hous. Auth., No. 02A019608-CV00190, 1997 WL 287645, at *2 (Tenn. Ct. App. June 2, 1997)(citing Whittaker v. Care-More, Inc., 621 S.W.2d 395, 397 (Tenn. Ct. App. 1981)), *holding modified in part on other grounds by* Reed v. Alamo Rent-A-Car, Inc., 4 S.W.3d 677 (Tenn. Ct. App. 1999). To be enforceable, "a contract must result from a meeting of the minds of the parties in mutual assent to [its] terms," Staubach Retail Servs.-Se., LLC v. H.G. Hill Realty Co., 160 S.W.3d 521, 524 (Tenn. 2005)(citation and internal quotation marks omitted). Gardner v. Univ. of Memphis Coll. of Bus., No. W2002-01417-COA-R3CV, 2003 WL 1872640, at *3 (Tenn. Ct. App. Apr. 8, 2003). In only a "few instances" have Tennessee courts "concluded that the language of an employee handbook [or policy] was binding on an employer." Williams, 1997 WL 287645 at *2 (collecting cases). Additionally, "[a]ny language that preserves a unilateral right on the part of the employer to alter or modify the contents of [an employee handbook or compilation of policies] . . . would generally preclude considering it as a contract and would indicate that the handbook simply constituted a set of guidelines or a source of information for an employee." Claiborne v. Frito–Lay Inc., 718 F. Supp. 1319, 1321 (E.D. Tenn. 1989)(applying Tennessee law).

In this case, the 2004 Personnel Policies expressly state that they are not a contract. (*See* Personnel Rules and Regulations at 75, D.E. 45-6.) They further provide that the City "reserves

the right to change any or all such policies, practices, and procedures in whole or in part at any time, with or without notice to employees." (Id.) As such, apt is the general rule in Tennessee that "[w]here an employee handbook specifically provides that it is not a contract and reserves to the employer the unilateral right to amend the handbook's provisions, such handbook does not, as a matter of law, constitute part of the employment contract between the employer and the employee." Adcox v. SCT Prods., No. 01A01-9703-CV-00123, 1997 WL 638275, at *3 (Tenn. Ct. App. Oct. 17, 1997). Case law supports application of the rule to these facts. *See, e.g.*, Sudberry v. Royal & Sun Alliance, 344 S.W.3d 904, 913 (Tenn. Ct. App. 2008)(concluding, "[b]ased upon the prevailing law in Tennessee," that a company's employee handbook was not intended to be contractually binding given that in it the company "expressly reserve[d] the right to amend the handbook" and "stated that the handbook 'is not intended as a contract'"); Knox v. Textron Aerostructures, No. 01-A-019205CV00189, 1992 WL 353266, at *3 (Tenn. Ct. App. Dec. 2, 1992)(written policy outlining company's reduction-in-force procedure was not part of an employment contract where "the procedure itself provided that it could be modified or superceded at any time"); Smith, 778 S.W.2d at 858 (because personnel policy manual's language clearly revealed "that modifications were anticipated," the manual was "merely a summary of existing [county] personnel policies").

To counter any doubt that the 2004 Personnel Policies were not contractually binding promises from the City to its employees, they expressly state that they are intended "for information only," (Personnel Rules and Regulations at 75, D.E. 45-6). *Cf.* Crittenden v. Memphis Hous. Auth., No. 02A01-9609-CV-00211, 1997 WL 370363, at *4 (Tenn. Ct. App. July 3, 1997)(the conclusion that the employer's manual of operations was not a contract was "further supported by language indicating that the Manual's purpose 'is intended primarily as a

guide for employees in the discharge of their duties'"); Claiborne, 718 F. Supp. at 1321 (handbook "simply constituted a set of guidelines or a source of information for an employee" where it "merely provide[d] basic information about the employment and explain[ed] 'certain company policies'"). Considering together the disclaimers in the 2004 Personnel Policies as to their limited purpose and unilaterally revisable nature, the Court cannot conclude that the policies, either collectively or individually, constituted a binding, contractual agreement between the City and its employees. *Cf.* Adxoc, 1997 WL 638275 at *4 ("Inasmuch as the handbook at issue contained both [an express statement that the handbook is not a contract and a reservation of a unilateral right to modify its provisions], we conclude that the trial court properly dismissed the Employees' claims for breach of employment contract against SCT."). As such, summary judgment is GRANTED to the City on Plaintiffs' breach-of-contract claims.

B. Fourteenth Amendment Due Process Claims under 42 U.S.C. § 1983

Section 1983 imposes liability on any "person who, under color of any statute, ordinance, regulation, custom or usage, of any State" subjects another to "the deprivation of any rights, privileges, or immunities secured by the [United States] Constitution or laws." 42 U.S.C. § 1983. In order to prevail on such a claim, a plaintiff must establish "(1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law." Wittstock v. Mark A. Van Sile, Inc., 330 F.3d 899, 902 (6th Cir. 2003). "Section 1983 is not the source of any substantive right, but merely provides a method for vindicating federal rights elsewhere conferred." Humes v. Gilless, 154 F. Supp. 2d 1353, 1357 (W.D. Tenn. 2001).

Plaintiffs contend that the City violated their rights to procedural due process under the Fourteenth Amendment, which protects against government action that deprives "'any person of

life, liberty, or property, without due process of law.'" Bracken v. Collica, 94 F. App'x 265, 267 (6th Cir. 2004)(quoting U.S. CONST. Amend. XIV, § 1). In considering a claim for violation of procedural due process, the Court must first determine "whether the interest at stake is within the Fourteenth Amendment's protection of liberty and property." Hamilton v. Myers, 281 F.3d 520, 529 (6th Cir. 2002)(citing Ferencz v. Hairston, 119 F. 3d 1244, 1247 (6th Cir. 1997)), *reh'g & suggestion for reh'g en banc denied* (Apr. 10, 2002). After establishing a protected interest, the plaintiff must then show "such interest was abridged without appropriate process." Id. (quoting LRL Props. v. Portage Metro Hous. Auth., 55 F.3d 1097, 1108 (6th Cir. 1995), *reh'g & suggestion for reh'g en banc denied* (July 6, 1995)).

The Defendant argues that the Plaintiffs cannot show they had a property interest—for the purposes of a procedural due process claim—in having their unused sick leave reported to TCRS at a rate of one day for every twelve hours of unused leave. Other than their own subjective expectations, the City insists, there is no basis for Plaintiffs' position that they were entitled to this method of calculation. The Fourteenth Amendment does not itself create property interests; "rather they are created and defined by independent sources, such as state law." Hamilton, 281 F.3d at 529 (citing Brotherton v. Cleveland, 923 F.2d 477, 480 (6th Cir. 1991), *reh'g denied* (Apr. 3, 1991)). "Property interests protected by the due process clause must be more than abstract desires for or attractions to a benefit. The due process clause protects only those interests to which one has a 'legitimate claim of entitlement.'" Id. (internal citations omitted)(citing Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972)). These interests may be derived from "a state statute, a formal contract, or a contract implied from the circumstances." Ludwig v. Bd. of Trs. of Ferris State Univ., 123 F.3d 404, 409 (6th Cir. 1997)(citing Perry v. Sindermann, 408 U.S. 593, 602, 92 S. Ct. 2694, 33 L.

Ed. 2d 570 (1972); *see also* Perry, 408 U.S. at 601, 92 S. Ct. at 2699 ("A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit . . . .").

As previously determined, the 2004 Personnel Policies do not constitute a contract between Plaintiffs and the City. However, the personnel policy in question need not be part of a formal contract to have conferred upon Plaintiffs a constitutionally protected property interest, so long as there was "a mutually explicit understanding," giving rise to a legitimate claim of entitlement, that the policy would be enforced in the manner Plaintiffs interpret it. *See* Ramsey v. Bd. of Educ., 844 F.2d 1268, 1272 (6th Cir. 1988)("the fact that Ramsey's claim to her accumulated sick leave days is not based on her written employment contract with the Board is not dispositive of the issue of whether she has a constitutionally protected property interest in those days"); *see also* Perry, 408 U.S. at 601, 92 S. Ct. at 2699 (reiterating that constitutionally protected property interests "are not limited by a few rigid, technical forms"). Based on this position, the Plaintiffs maintain that the 2004 Personnel Policies, enacted by resolution of the City's mayor and board of alderman, pursuant to authority granted by the city charter, had the "force of law" and therefore could be legitimately expected to be complied with and enforced. The more salient question, however, is whether, even having the force of law, the personnel policy in question actually applied to the City's conversion of unused sick-leave hours to days for purposes of TCRS reporting.

As written, the personnel policy specifically addresses the manner in which the City would *charge* an employee for *used* sick-leave time, without particular reference to how it might eventually *credit* the employee for *unused* leave. (*See* Personnel Rules and Regulations at 31, D.E. 45-6.) Nonetheless, Plaintiffs insist that the policy must be read to apply to the City's

11

reporting of unused sick-leave days to the TCRS because interpreting it otherwise "would require this Court to accept that one day of sick leave equals a certain number of hours when it is used . . . but equals a ***different*** number of hours when it is unused." (Mem. in Supp. of Pls.' Mot. for Summ. J., D.E. 44-1 at 15 (emphasis in original).) However, deciphering the policy as Plaintiffs suggest is not merely a matter of choosing a broader over a narrower reading of the language. To adopt their interpretation would require the Court to strain the plain meaning of the policy and, in essence, rewrite it to encompass a matter that the as-written 2004 Personnel Policies, whether intentionally or unintentionally, altogether ignored. This the Court is not free to do. *See* EVCO Corp. v. Ross, 528 S.W.2d 20, 23 (Tenn. 1975)("words . . . must be given their ordinary and customary usage, and not a strained or unnatural interpretation"); Ward v. AMI SUB (SFH), Inc., 149 S.W.3d 35, 39 (Tenn. Ct. App. 2004)("it is not within the province of this Court to rewrite the plain language of a statute"); In re Adoption of Dunaway, No. 03A01-9811-CH-000380, 1999 WL 552873, at *1 (Tenn. Ct. App. July 29, 1999)("We recognize that it might be salutary if the Legislature had chosen to grant some discretion to the trial court in cases such as this, but it has not, and we decline to rewrite the unambiguous language of the statute.").[4]

Moreover, there is no evidence that anyone besides the Plaintiffs has ever interpreted the personnel policy in question as they suggest. Rather, they rely on their own subjective belief that by proscribing the method by which the City would charge used sick leave to its employees, the policy necessarily requires the City to use a corresponding method in crediting such leave for TCRS purposes. This is significant because in the absence of some "mutually explicit understanding" between them and the City as to how their unused, accumulated sick leave would be reported to TCRS, the Plaintiffs had nothing more than a "unilateral expectation" that they

---

[4] In interpreting municipal ordinances, courts use the ordinary rules of statutory construction. Tenn. Manufactured Hous. Ass'n v. Metro. Gov't, 798 S.W.2d 254, 260 (Tenn. Ct. App. 1990)

would be credited one day for every twelve hours of unused leave. *Cf.* Daniels v. Borough of Spring Lake Heights, No. No. CIV A 07-4921 JAP, 2009 WL 3055360, at *5 (D.N.J. Sept. 18, 2009)(plaintiff's "unilateral expectations based on his interpretation of the Policy do not rise to the level of a property interest [in the form of a mutually explicit understanding] as seen in Perry"); Melendez v. Sinclair Cmty. Coll., No. 3:05-cv-338, 2007 WL 81846, at *6 (S.D. Ohio Jan. 8, 2007)(noting that for the court to conclude plaintiff had a protected property interest it would have to adopt his interpretation of an employee handbook at issue; declining to do so where plaintiff relied only "his own understanding" of the meaning of the handbook, which was an unreasonable interpretation of the plain language). Even the Plaintiffs' conclusion that the policy required that twelve unused hours be converted into one day for crediting purposes is suspect in light of the undisputed fact that the City never even implemented the policy in *charging* employees' for used sick time. Instead, employees were charged for the number of hours they missed due to illness, and the amount charged was never expressed in any number of days.

Furthermore, what Plaintiffs claim is in essence an interest in the procedure the City allegedly was required to employ in facilitating the TCRS's provision of retirement benefits, and it is well established that a party can have no constitutionally protected property interest in a *procedure*. See Chandler v. Vill. of Chagrin Falls, 296 F. App'x 463, 469 (6th Cir. 2008)("processes mandated by municipal ordinances or state law are insufficient to establish a property interest"); Richardson v. Twp. of Brady, 218 F.3d 508, 518 (6th Cir. 2000)(plaintiff who claimed property interest in having a township follow its own proscribed procedure for amending a zoning ordinance could "have no property interest in the procedure itself"); Ferencz, 119 F.3d at 1248 ("a governmental body's failure to follow a given procedure does not create a

13

property right"). "The categories of substance and procedure are distinct," and "'[p]roperty' cannot be defined by the procedures provided for its deprivation." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541, 105 S. Ct. 1487, 1493, 84 L. Ed. 2d 494 (1985).

In the analogous case of Swartz v. Scruton, 964 F.2d 607 (7th Cir. 1992), the Seventh Circuit Court of Appeals rejected a plaintiff-professor's position that he enjoyed a constitutionally protected property interest in having the university adhere to its own previously outlined method for calculating merit pay increases. Id. at 610. He had alleged damages under 42 U.S.C. § 1983 based on the lower pay increase he received when the chairman of his department created and applied a new, different formula in calculating his merit pay. Id. at 608. In reaching its holding, the court stated:

> Swartz argues that he enjoys a Fourteenth Amendment property interest "in a method of calculation of merit pay." Reply Brief of Appellant at 5 (emphasis in original). We disagree. Procedural interests under state law are not themselves property rights that will be enforced in the name of the Constitution. Olim v. Wakinekona, 461 U.S. 238, 248-51, 103 S. Ct. 1741, 1746-49, 75 L. Ed. 2d 813 (1983); Archie v. City of Racine, 847 F.2d 1211, 1217 (7th Cir. 1988) (en banc), cert. denied, 489 U.S. 1065, 109 S. Ct. 1338, 103 L. Ed. 2d 809 (1989); Shango v. Jurich, 681 F.2d 1091, 1100-01 (7th Cir. 1982). "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." Olim, 461 U.S. at 250, 103 S. Ct. at 1748. Thus, Swartz's asserted legitimate claim of entitlement to the process-the "method"-by which his merit pay increase is determined is not a constitutionally protected property interest.

Id. at 610. In this case, the Plaintiffs have explicitly stated that the protected property interest they assert is the "right to have unused sick leave credited at a rate of one day per 12 hours at the time their pensions vested." (Mem. in Supp. of Pls.' Mot. for Summ. J., D.E. 44-1 at 10.) Thus, here, as in Swartz, the entitlement Plaintiffs claim—to a specific formula for counting their unused, accumulated sick leave toward creditable service—is to a *process*, rather than substance, and is therefore not a property interest protected by the Fourteenth Amendment.

Because the Plaintiffs did not have a constitutionally protected property interest in having their accumulated, unused sick leave reported to the TCRS at a rate of one day for every twelve hours of unused leave, their procedural due process claims must fail. Accordingly, Defendant's motion for summary judgment as to the § 1983 claims is GRANTED, the Plaintiffs' motion for summary judgment is DENIED, and these claims are DISMISSED. As such, the issues of whether the 2004 Personnel Policies apply to the claims of Gertsch and Hart; whether the Plaintiffs had adequate, alternative remedies under state law; and whether Dudley's claim is time barred, are moot.

*CONCLUSION*

For the reasons set forth herein, Plaintiffs' motion for summary judgment is DENIED; the City's motion for summary judgment is GRANTED; and this case is DISMISSED with prejudice.

IT IS SO ORDERED this 17th day of April, 2014.

s/ J. DANIEL BREEN
CHIEF UNITED STATES DISTRICT JUDGE